Dwight David LITTLE, Appellant–Defendant,

v.

STATE of Indiana, Appellant–Plaintiff.

No. 45A03–9705–CR–165.

Court of Appeals of Indiana.

April 30, 1998.

---

Jeff Schlesinger, Crown Point, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Dwight David Little appeals his conviction of Murder.[1] Little presents the following restated issues for review:

1. Did the trial court err in admitting Little's confession into evidence?

2. Was there sufficient evidence to support an instruction on accomplice liability?

3. Did the trial court commit reversible error by inserting the element of "by means of a deadly weapon" into the murder instruction?

4. Did the trial court err in not permitting Little to present evidence concerning his character?

---

1. Ind.Code Ann. § 35–42–1–1 (West 1998).

We affirm.

The facts are that in the early morning hours of October 2, 1994, the Gary Police Department received a 911 call reporting that a man had been shot. Officer Roscoe Fleming arrived two minutes after the call was placed and approached the residence in question. He heard a commotion inside and requested that he be allowed to enter, but his initial requests were denied. When he finally gained entry, he observed a man, later identified as Lee Holmes, lying dead on the floor. Holmes had suffered multiple gunshot wounds. Officer Fleming found four other people in the apartment, including William Sanders, his son Terrence Sanders, Terrence's wife Patricia Sanders, and Little. Officer Fleming questioned the four as to what had occurred and they offered no information. The officer handcuffed Terrence, led him outside, and asked again what had occurred. This time, Terrence responded that Little had killed Holmes. William and Patricia then corroborated Terrence's assertion that Little had killed Holmes. Little was arrested and charged with Holmes's murder.

On October 3, the day after Little's arrest for the murder of Holmes, the body of Little's girlfriend, LaShawn Drearr, was found in a storage container in the basement of Little's father's house in Chicago, Illinois. She had been shot thirteen times. Chicago police interviewed Little's father and learned that there was a criminal charge of attempted murder pending against Little in Chicago, stemming from an incident in which Little allegedly fired gunshots at Drearr's residence. Little's father informed police that Little was angry with Drearr because she had tipped police off that Little was carrying weapons, thus leading to his arrest, and because she had agreed to testify against Little. Detectives Wojcik and McMurray of the Chicago Police Department and Illinois Assistant State's Attorney Maria Kuriakos learned that Little was being held in Indiana in the Lake County Jail in connection with the Holmes murder.

The next day, October 4, Kuriakos and Detectives Wojcik and McMurray traveled to the Lake County Jail to question Little about Drearr's murder. Because it is pertinent to the first issue Little presents upon appeal, we will briefly describe the relevant events that took place at the interview. The three met with Little in an interview room at the jail. They identified themselves and informed Little that they were investigating Drearr's death. Kuriakos advised Little of his Miranda rights and asked if he would be willing to talk with her concerning Drearr's death. Little agreed. Little claimed that Holmes had shot Drearr to death in the home of Little's father, while Little was there. Little then stated that Holmes left after disposing of the body. According to Wojcik,

> [Little] stated he was at the house for awhile and he was in shock, and he just realized what [Holmes] had done, and at that point he went and he got his .38. He said he drove to Gary, Indiana, to [Holmes's] residence, saw [Holmes] sitting in a chair, and his exact words were, "I walked up and I shot him." He said after he shot him he got into a struggle with Terry, and that Terry held him at the residence until the police responded and arrested him.

*Record* at 120RR. Little was convicted as set forth previously after a jury trial.

### 1.

Little claims that the trial court erred in allowing the State to introduce into evidence the statements he made during the interview with the Illinois officials concerning Drearr's death, including his confession that he had killed Holmes. According to Little, the confession is inadmissible because defense counsel was not present at the time he made it.

When a defendant challenges the admissibility of a confession, the State must prove by a preponderance of the evidence that the confession was voluntarily given and was not induced by violence, threats, promises, or other improper influences that overcame the defendant's free will. *Smith v. State*, 689 N.E.2d 1238 (Ind.1997). In determining whether the confession was voluntari-

ly given, we examine all of the circumstances surrounding the confession in order to determine the effect of the interrogation upon the defendant's will to resist. *Haviland v. State*, 677 N.E.2d 509 (Ind.1997).

Little's contention that his confession was not voluntary is premised primarily upon two contentions. First, he claims that the Illinois law enforcement officers did not advise him of his Miranda rights prior to questioning him. Second, he notes that they did not contact his counsel for the Indiana case prior to questioning him about the Illinois murder.

We address first Little's claim that he was not advised of his Miranda rights. Our analysis begins with the presumption that the defendant did not waive his rights. *Deckard v. State*, 670 N.E.2d 1 (Ind.1996). In order to refute this presumption, the State must prove beyond a reasonable doubt that the defendant knowingly and intelligently waived his rights. *Thompson v. State*, 613 N.E.2d 461 (Ind.Ct.App.1993). Of course, the State must first prove beyond a reasonable doubt that the defendant was effectively advised of his rights in the first place. *Misztal v. State*, 598 N.E.2d 1119 (Ind.Ct.App. 1992), *trans. denied.*

The evidence was conflicting as to whether Little was advised of his Miranda rights prior to making the statements. Detective Wojcik claimed that Kuriakos advised Little of his rights, a claim which Little denied. Considering only the evidence favorable to the State where the evidence is conflicting, *see Tingle v. State*, 632 N.E.2d 345 (Ind.1994), we conclude that the detective's testimony was sufficient to prove that Little was advised of his Miranda rights prior to making the statements in question. *Reaves v. State*, 586 N.E.2d 847 (Ind.1992).

We now address the question of whether the statements were voluntary. As we indicated previously, the question of voluntariness is resolved by examining the circumstances in which the confession was made to determine whether the confession was the product of the defendant's free will. *Haviland v. State*, 677 N.E.2d 509. The record reveals that Little freely confessed to shooting Holmes as a part of his exculpatory

explanation to the Illinois law enforcement officers about how Drearr was killed. There is no indication that it was anything other than an unsolicited confession made in an effort to absolve himself of responsibility for the Illinois murder. Therefore, the defendant's confession to murder was voluntary, despite the fact that the Illinois contingent did not notify the defendant's Indiana attorney before interviewing Little about the Illinois murder. *See Bivins v. State,* 642 N.E.2d 928 (Ind.1994), *cert. denied,* 516 U.S. 1077, 116 S.Ct. 783, 133 L.Ed.2d 734; *cf. Heard v. State,* 165 Ga.App. 252, 300 S.E.2d 213 (1983) (confession ruled admissible where a jailed defendant was interviewed by a detective from a different county who interviewed the defendant about a different crime, confessed during the interview to the crime for which he was jailed).

The trial court did not err in admitting evidence concerning Little's confession.

### 2.

Little contends the evidence was insufficient to support an instruction on accomplice liability.

We note first that Little failed to object to the instruction at trial. Therefore, the issue was waived. *Taylor v. State,* 614 N.E.2d 944 (Ind.Ct.App.1993), *trans. denied.* Little seeks to escape waiver by claiming fundamental error. Our supreme court has explained the fundamental error doctrine as follows: "To qualify as fundamental error, the defendant bears the burden of proving that 'the error [was] a substantial blatant violation of basic principles rendering the trial unfair to the defendant.'" *Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1150 (Ind.1997) (quoting *Hart v. State,* 578 N.E.2d 336, 337 (Ind.1991)). An instruction concerning accomplice liability is appropriate if, among other things, the evidence permits a reasonable inference that the defendant may have been accompanied by others at the time the offense was committed.

In the instant case, Patricia Sanders testified that immediately after Holmes was shot, she observed her husband, Terrence, with a gun in his hand. She also testified that Terrence and Little attempted to persuade her to tell the police that a stranger had entered the residence and shot Holmes. Little's defense at trial included the claim that Terrence was the one who shot Holmes. Finally, when Officer Fleming arrived at the residence, he was initially denied entrance to the residence. After he was admitted, he found both Little and Terrence Sanders in the room and both denied knowledge of what had transpired.

This evidence was sufficient to raise an inference of concerted action. The trial court's decision to instruct the jury on accomplice liability was not erroneous and, therefore, certainly did not constitute fundamental error. The issue was waived. *Ben–Yisrayl v. State,* 690 N.E.2d 1141.

### 3.

Little contends the trial court committed reversible error by including the element "by means of a deadly weapon" in the instruction for murder.

As was the case with the instruction on accomplice liability, Little failed to object to the murder instruction at trial, thereby waiving any error in that regard unless it constituted fundamental error. *Ben–Yisrayl v. State,* 690 N.E.2d 1141.

In order to prevail on a claim of fundamental error, Little must prove that his defense was so prejudiced by the claimed error that he could not possibly have received a fair trial. *Barany v. State,* 658 N.E.2d 60 (Ind.1995). By injecting the added element of "by means of a deadly weapon" into the offense of murder, the trial court actually increased the State's burden in obtaining a conviction. That is, the instruction informed the jury that the State must prove an element that, in reality, is not an element of the offense of murder. The added burden to the State, if anything, redounded to Little's benefit. His defense certainly was not prejudiced by the error. Therefore, the inclusion of an extra element did not constitute fundamental error. The error was waived. *Ben–Yisrayl v. State,* 690 N.E.2d 1141.

### 4.

Little contends that the trial court erred in not allowing him to present character evidence.

■ We have examined the record and cannot agree with the assertion underlying Little's contention, *i.e.*, that the trial court disallowed character evidence offered by Little. Rather, the record reflects that the State, Little's counsel, and the court discussed testimony which Little's counsel proposed to elicit from Little's father regarding Little's education and occupational background. During a thorough discussion of the proposed testimony outside the presence of the jury, the court expressed its view that through such testimony, defense counsel would introduce the subject of character. The court indicated that introduction of the topic might ultimately be harmful to the defense. The colloquy concluded as follows:

BY THE COURT:

But I do think it opens the door in this case, and I don't want to see that happen.

BY [DEFENSE COUNSEL]:

I don't want to do that. Judge, I think I made my record.

*Record* at 949. After the jury returned, defense counsel did not attempt to question Little's father as he had earlier proposed to do. Therefore, it cannot fairly be said that the trial court denied an attempt by Little to introduce character evidence. Little's contention in this regard is without merit.

Judgment affirmed.

SULLIVAN and KIRSCH, JJ., concur.