REVISED - 6/29/98

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

————————————

No. 97-40184

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JESUS SANTA MARIA-MARTINEZ,
a.k.a. CHUEY,

Defendant-Appellant.

——————————————————

Appeal from the United States District Court
for the Southern District of Texas

——————————————————

June 10, 1998

Before KING, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jesus Santa Maria-Martinez appeals a guilty plea entered while he was represented by an attorney who had been barred from practicing before courts in the Fifth Circuit. Because the record is not sufficiently developed to evaluate a claim of ineffective assistance of counsel, we affirm.

I.

Maria-Martinez and his brother sold drugs out of a trailer in Victoria, Texas. Using a confidential informant, the Victoria

Police Department purchased 2.96 grams of heroin from Maria-Martinez in 1993. In 1995, another confidential informant telephoned Maria-Martinez, who arranged for the caller to meet with his brother in a drug store parking lot and purchase twelve grams of heroin.

Maria-Martinez was arrested and charged with various narcotics offenses in April 1996; attorney Carlos Alvarado was promptly appointed to represent him and did so throughout the district court proceedings, despite the fact that Fifth Circuit Chief Judge Politz had issued an order barring Alvarado from the practice of law in Fifth Circuit courts for a period of at least six months, to end no earlier than June 1996. Alvarado could have reapplied for permission to practice after the six-month period elapsed, but never did so.

On May 8, 1996, a superseding indictment charged Maria-Martinez with conspiracy to possess with intent to distribute a controlled substance, along with four counts of aiding and abetting in the knowing distribution of heroin. He pleaded not guilty on May 17, but entered a guilty plea on two counts on September 23, pursuant to a plea agreement.

The plea agreement included a promise by the government to dismiss three counts and to recommend a three-level sentence reduction for acceptance of responsibility and a sentence at the lower end of the sentencing guideline range. In return, Maria-Martinez promised his truthful testimony at rearraignment and sentencing. The district court accepted these recommendations but

enhanced the sentence by two levels based on possession of a dangerous weapon during a drug trafficking offense.

Alvarado filed a notice of appeal for Maria-Martinez in January 1997. In April 1997, the Fifth Circuit entered an order noting that Alvarado had been barred from practice within the circuit and vacating his appointment in Maria-Martinez's case. The district court was ordered to obtain new counsel, and did so.

## II.

Maria-Martinez asks that we reverse his conviction because he received ineffective assistance of counsel. We do not typically review claims of ineffective assistance on direct appeal, because the record is rarely sufficiently developed on the issue of counsel's competence. *See, e.g., United States v. Foy*, 28 F.3d 464, 476 (5th Cir. 1994). Although Maria-Martinez asserts several ways in which his counsel allegedly erred, the record is not complete without Alvarado's testimony as to any tactical motivations behind his actions and as to how these errors influenced the result.

For instance, Maria-Martinez claims Alvarado failed to move to suppress evidence obtained by a search warrant allegedly containing stale information. We have held that a claim of ineffective assistance based on a failure to file a motion to suppress cannot be reviewed without testimony as to the reasons behind failing to file the motion. *See United States v. Chavez-Valencia*, 116 F.3d 127, 133-34 (5th Cir.), *cert. denied*, 118 S. Ct. 325 (1997).

Maria-Martinez argues that such a record is unnecessary, because his counsel had been suspended and was therefore ineffective as a matter of law, even if he committed no error nor caused prejudice to the defendant's rights through his incompetence. Maria-Martinez relies, for this argument, on cases from other circuits holding that an unlicensed attorney may, in some cases, be found ineffective *per se*. This court has never applied a *per se* ineffectiveness rule; accordingly, whether and when we may apply such a rule is *res nova* in this circuit.[1]

## A.

Some other circuits have applied a *per se* ineffectiveness rule to improperly credentialed lawyers in two situations. The first involves a lawyer who has not demonstrated the specialized knowledge that attorneys must possess. For instance, the District of Columbia Circuit applied a *per se* test where the defendant was represented by an ex-convict posing as a lawyer, who had never gone to law school. *See Harrison v. United States*, 387 F.2d 203, 212-14 (D.C. Cir. 1967). Similarly, the Second Circuit has applied a *per se* rule where the attorney had gone to law school but had failed to pass any bar examination, after several attempts. *See Solina v. United States*, 709 F.2d 160, 169 (2d Cir. 1983). The

---

[1] *Cf. United States v. McKinney*, 53 F.3d 664, 675 (5th Cir. 1995) (defendant's attorney barred from practice in Texas, but had not been suspended by the Fifth Circuit; noting that circuit rules did not require automatic suspension in federal court when the predicate state bar license was revoked, and finding that the attorney "was adequately credentialed at all times relevant to this case to practice law in the Federal District Court for the Northern District of Texas . . .," and finding no *per se* ineffectiveness).

4

second class of cases involves lawyers who were involved in the crime of which the defendant was accused, thus creating a conflict of interest. *See, e.g., United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir. 1984).

The first class of casesSSthe one most relevant hereSSis based on two considerations. First, courts are concerned that a defendant have a counselor who has legal training and has demonstrated the specialized knowledge and ability of a lawyer. *See, e.g., United States v. Mouzin*, 785 F.2d 682, 697 (9th Cir. 1986).

Second, an undisclosed lack of credentials may create a conflict of interest. The inadequate credentials provide an incentive for lackluster representation, the theory goes, because the attorney will be concerned about drawing attention to himself and encouraging an inquiry into his background. *See, e.g., Solina*, 709 F.2d at 164 (citing *Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978)). At least one of these concerns must be present before a *per se* rule is appropriate. *United States v. Aiello*, 900 F.2d 528, 532 (2d Cir. 1990).

There is little question that Maria-Martinez had an attorney who possessed the specialized knowledge necessary to represent a client. Although he had been barred from practice in the Fifth Circuit on the basis of his handling of an appeal for another client, Alvarado was a member of the Texas bar throughout the proceedings.

While Alvarado's suspension did not arise from a technical

5

failure to meet requirements, it also did not result from a demonstrated lack of legal knowledge. Rather, he was suspended for failing to file documents in connection with the appeal and to apply for admission to the Fifth Circuit in order to litigate the appeal.

Because this is a direct appeal rather than an appeal from the denial of a 42 U.S.C. § 2255 motion, the record does not contain any explanation for Alvarado's neglect of this matter, but numerous explanations could be offered consistent with his continuing ability to represent other clients. The record before us in no way demonstrates an inability properly to represent a client to whom he could devote sufficient time and attention, as he appears to have done in this case.

Although the Second Circuit and several other circuits apply a *per se* rule in some cases, they do not apply it to lawyers who are properly credentialed in another court. In *Derringer v. United States*, 441 F.2d 1140, 1141 (8th Cir. 1971), and *United States v. Bradford*, 238 F.2d 395 (2d Cir. 1956), the courts did not apply a *per se* rule where an attorney was properly admitted to a state bar but had not applied for permission to practice in federal court. Similarly, the Seventh Circuit did not apply a *per se* rule to an attorney who was admitted to the bar in Iowa, failed the bar in Indiana several times, then represented a defendant in Indiana. *See United States v. Merritt*, 528 F.2d 650, 651 (7th Cir. 1976) (per curiam).

These cases demonstrate that the key to adequate

6

representation is not technical license to practice in the jurisdiction involved, but a credential from *some* forum demonstrating the specialized knowledge of a lawyer. Courts applying a *per se* rule appear to do so only where the attorney was *never* properly licensed to practice.[2] No published case of which we are aware has applied a *per se* rule merely because the attorney was not properly credentialed in the jurisdiction in which the case arose.[3]

If Alvarado possessed sufficient skill to represent Maria-Martinez, the argument for a *per se* ineffectiveness rule depends solely upon the conflict of interest created by Alvarado's unauthorized representation in a court of the Fifth Circuit. The present situation lies somewhere between the typical *per se* case, in which the attorney is subject to criminal sanctions for practicing law without a license, and the typical factual-determination case, in which the attorney is only suspended from a predicate state bar, is suspended for a technical violation, or does not know he is suspended.

The most closely analogous case is *Bellamy*, in which the

---

[2] *See, e.g., Solina*, 709 F.2d at 167 ("We limit our decision . . . to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state . . . from failure to seek it or from its denial for a reason going to legal ability . . . ."); *see also Bellamy v. Cogdell*, 974 F.2d 302, 306 (2d Cir. 1992) (en banc) (stating that the *per se* rule is limited to cases in which counsel was "not duly licensed to practice law because of a failure ever to meet the substantive requirements").

[3] *Cf. Graves v. United States*, 1997 U.S. App. LEXIS 23194, at *9 (7th Cir. 1997) (unpublished) (suggesting application of a *per se* rule to an "attorney who knew he was suspended for disciplinary reasons by the court in which the defendant was being prosecuted"; remanding for findings on prejudice and instructing district court to reach question whether *per se* rule could be applied only if he found no prejudice).

Second Circuit declined to apply a *per se* standard. *See Bellamy*, 874 F.2d at 303. In that case, the attorney, Guran, postponed a disciplinary hearing with a statement by his doctor that he was ill, had trouble concentrating, and would be incapacitated for some time. *Id.* at 303-04. Based on this statement, the hearing was postponed. The disciplinary committee attempted to have Guran suspended from the practice of law on the basis of his illness, but Guran begged them to refrain from taking this step. He complained of the stigma attached to suspension, pointed out that he had been retired, aside from Bellamy's case, for some time, and asked to retain his license so that he could second-chair Bellamy's case. He stated that he would have a competent attorney try the case, but needed to assist because of his longstanding relationship with the defendant and his mother, who had already paid Guran's fee. *Id.* at 304.

Presumably on the basis of these representations, the disciplinary committee took no action on Guran's proposed suspension, allowing him to continue his representation of Bellamy. *Id*. Guran did not in fact employ the services of co-counsel, however, and tried the case himself. The majority opinion accepts at face value Guran's claim that his co-counsel was unexpectedly unavailable at trial, but the dissent points out that he barely mentioned the trial to his proposed co-counsel, did not make use of co-counsel, and lacked funds with which to pay co-counsel. *Id*. at 310. Had the committee learned that he was trying the case himself, Guran almost certainly would have been suspended; in

8

fact, he was suspended two weeks after the trial was completed.

Nevertheless, the majority refused to apply the *per se* rule for ineffectiveness, pointing out that Bellamy was properly licensed throughout the trial. Yet, Guran's fear of exposure was at least as significant as Alvarado's. Both had to worry about the possible future suspension of their licenses (or in Alvarado's case, the denial of his reapplication to practice in the circuit), but were unlikely to face criminal prosecution if they were caught. In contrast, the representatives in *Solina* and *Harrison* were breaking the law by providing legal representation without a license.

Of course, it is possible that individuals in Guran's or Alvarado's situation would, for instance, aim to avoid trial in order to minimize exposure of their unauthorized practice in a circuit in which they were suspended or not authorized to conduct trials on their own. The conflict is much less severe, however, than that of an attorney who is connected with the crime or who has never been licensed to practice law in any jurisdiction. In many cases, as in this one, the lawyer's status will not affect the outcome of the criminal proceeding. Furthermore, as *Bellamy* demonstrates, having a license does not preclude such a conflict.[4]

B.

_____

[4] *See also United States v. Novak*, 903 F.2d 883, 890 (2d Cir. 1990) (attorney obtained waiver of requirement by misrepresenting veteran status); *Vance v. Lehman*, 64 F.3d 119 (3d Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996) (attorney failed to disclose serious ethics investigation in California to licensing board of Pennsylvania).

We decline to employ the arbitrary distinctions created by the *per se* ineffectiveness test, because we are not convinced that the *per se* rule would lead to the right result in almost all cases or necessarily would conserve judicial resources. A *per se* rule should be applied only where it "will achieve the correct result in almost all cases." *Coleman v. Thompson*, 501 U.S. 722, 737 (1991). *Coleman*, decided after *Harrison, Solina*, and much of their progeny, suggests that a *per se* rule is inappropriate in many cases covered, or arguably covered, by it.[5]

Several of the cases in which courts have applied a *per se* rule have involved counsel with considerable practical experience to compensate for their failure to pass the bar.[6] Attorneys in such circumstances probably would not provide ineffective assistance in "almost all" cases. Even attorneys suffering from a conflict of interest probably would not provide ineffective assistance in almost all cases, particularly where, as here, a genuinely attractive plea bargain was available. Thus, *Coleman*

---

[5] Of course, the *Coleman* requirement would not apply if, as the *Solina* court believed, effective assistance of counsel were a prerequisite to the trial court's jurisdiction. *See Solina*, 709 F.2d at 168 ("Application of a per se rule appears to us to be required by . . . *Johnson v. Zerbst*. . . ."); *Johnson v. Zerbst*, 458 U.S. 458, 467 (1937) ("If the accused, however, is not represented by counsel . . . the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence . . . ."). After *Strickland v. Washington*, 466 U.S. 668 (1984), however, the jurisdictional requirement no longer applies, and the *per se* rule must be justified on prudential grounds. *See Washington*, 466 U.S. at 668 (requiring defendant to prove prejudice as well as that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). The *Washington* Court, *id.* at 692, stated that prejudice can be presumed only where counsel actively represents conflicting interests, and that even then the presumption does not equate with a *per se* rule.

[6] *See, e.g., Solina*, 709 F.2d at 169 (attorney graduated from law school but failed the bar); *United States v. Novak*, 903 F.2d 883, 890 (2d Cir. 1990) (attorney obtained license fraudulently, but appeared to have practiced successfully for 15-20 years).

counsels rejecting the *per se* rule.

In addition, the *per se* rule requires courts to draw difficult lines in order to determine which cases merit application of the rule. The *Solina* court would not apply a *per se* rule to a technical disbarment, such as for failure to pay dues, but would apply it to attorneys disbarred for more substantive reasons. *See Blanton*, 896 F. Supp. at 1462. Yet, attorneys are suspended, disbarred, or unlicensed for numerous reasons, reflecting a wide range of qualities of performance. Where, as here, the licensing defect does not obviously demonstrate incompetence, the wrong result may be reached, so a court may be hesitant to apply the rule at all.

C.

Because we conclude that prudential considerations do not justify applying a rule of *per se* ineffectiveness to cases of representation by improperly uncredentialed lawyers, Maria-Martinez's allegations of ineffective assistance must be evaluated on the merits under the *Washington* standard. As is our practice in direct appeals alleging ineffectiveness assistance of counsel, we AFFIRM the judgment, but without prejudice to a subsequent motion under 28 U.S.C. § 2255. We express no view on the merits of such a motion.