Dwight David LITTLE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0405–PC–214.

Court of Appeals of Indiana.

Dec. 21, 2004.

Dwight David Little, Michigan City, IN, pro se.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant, Dwight D. Little (Little), appeals the post-conviction court's denial of his Amended Petition for Post–Conviction Relief.

We affirm.

### ISSUE

Little raises three issues on appeal, which we consolidate and restate as the following issue: whether Little received ineffective assistance of trial and appellate counsel.

### FACTS AND PROCEDURAL HISTORY

On direct review, this court set forth the following facts in *Little v. State,* 694 N.E.2d 762 (Ind.Ct.App.1998):

[I]n the early morning hours of October 2, 1994, the Gary Police Department received a 911 call reporting that a man had been shot. Officer Roscoe Fleming arrived two minutes after the call was placed and approached the residence in question. He heard a commotion inside and requested that he be allowed to enter, but his initial requests were denied. When he finally gained entry, he observed a man, later identified as Lee Holmes, lying dead on the floor. Holmes had suffered multiple gunshot wounds. Officer Fleming found four other people in the apartment, including William Sanders, his son Terrence Sanders, Terrence's wife Patricia Sanders, and Little. Officer Fleming questioned the four as to what had occurred and they offered no information. The officer handcuffed Terrence, led him outside, and asked again what had occurred. This time, Terrence responded that Little had killed Holmes. William and Patricia then corroborated Terrence's assertion that Little had killed Holmes. Little was arrested and charged with Holmes's murder.

On October 3, the day after Little's arrest for the murder of Holmes, the body of Little's girlfriend, LaShawn Drearr, was found in a storage container in the basement of Little's father's house in Chicago, Illinois. She had been shot thirteen times. Chicago police interviewed Little's father and learned that there was a criminal charge of attempted murder pending against Little in Chicago, stemming from an incident in which Little allegedly fired gunshots at Drearr's residence. Little's father informed police that Little was angry with Drearr because she had tipped police off that Little was carrying weapons, thus leading to his arrest, and because she had agreed to testify against Little. Detectives Wojcik and McMurray of the Chicago Police Department and Illinois Assistant State's Attorney Maria Kuriakos learned that Little was being held in Indiana in the Lake County Jail in connection with the Holmes murder.

The next day, October 4, Kuriakos and Detectives Wojcik and McMurray traveled to the Lake County Jail to question Little about Drearr's murder.... The three met with Little in an interview room at the jail. They identified themselves and informed Little that they were investigating Drearr's death. Kuriakos advised Little of his Miranda rights and asked if he would be willing to talk with her concerning Drearr's death. Little agreed. Little claimed that Holmes had shot Drearr to death in the home of Little's father, while Little was there. Little then stated that Holmes left after disposing of the body. According to Wojcik,

[Little] stated he was at the house for awhile and he was in shock, and he just realized what [Holmes] had done, and at that point he went and he got his .38. He said he drove to Gary, Indiana, to [Holmes's] residence, saw [Holmes] sitting in a chair, and his exact words were, "I walked up and I shot him." He said after he shot him he got into a struggle with Terry, and that Terry held him at the residence until the police responded and arrested him.

*Id.* at 764–65.

On October 3, 1994, the State filed an information against Little, charging him with murder, a felony, Ind.Code § 35–42–1–1. On February 16, 1995, Little's trial counsel, George C. Howard (Howard), who is licensed to practice law in Illinois but not in Indiana, filed an appearance. On April 5, 1995, the trial court ordered Howard to retain local counsel. On August 7, 1995, an attorney who is licensed to practice law in Indiana filed an appearance as local counsel. Howard was then suspended from the practice of law in Illinois from September 29, 1995, until February 28, 1996. On February 23, 1996, while he was suspended, Howard represented Little at a pre-trial hearing. On October 28, 1996, Little's jury trial was held; Howard acted as Little's trial counsel without local counsel being present. Immediately following the conclusion of the trial on November 4, 1996, the jury returned a verdict of guilty of murder. Little then appealed to this court, which affirmed his murder conviction in the above-cited opinion.

On November 26, 2002, Little filed a Petition for Post–Conviction Relief. On June 26, 2003, Little filed an Amended Petition for Post–Conviction Relief. On August 26, 2003, the post-conviction court held a hearing on Little's amended petition. Thereafter, on March 11, 2004, the post-conviction court issued Findings of Fact and Conclusions of Law, denying Little's request for relief.

Little now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Post–Conviction Relief Standard of Review

This is an appeal from the denial of post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.*

Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied*). In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

### II. Ineffective Assistance of Counsel

Little argues that he was denied the effective assistance of trial and appellate

counsel in violation of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, § 13 of the Indiana Constitution. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Blanchard v. State*, 802 N.E.2d 14, 34 (Ind.Ct.App.2004) (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*).

Counsel's performance is presumed effective, however, and a defendant must offer strong and convincing evidence to overcome this presumption. *Id.* Moreover, we do not need to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052. To satisfy a showing of prejudice, Little must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Blanchard*, 802 N.E.2d at 34.

### A. Ineffective Assistance of Trial Counsel

Little argues first that he received ineffective assistance of trial counsel. Specifically, Little urges us to find that Howard's conduct constitutes ineffective assistance of counsel *per se* because Howard failed to comply with Indiana Admission and Discipline Rules 3 and 23(26), which mandate, *inter alia*, (1) that non-local attorneys petition the trial court for permission to practice *pro hac vice*, which involves retaining local counsel, and (2) that suspended attorneys notify the court of their suspension.[1] Little also asserts that he received ineffective assistance of counsel because Howard failed to challenge the jury instruction on accessory liability. We consider each assertion in turn.

#### 1. Admission and Discipline Rule 3

Little asserts that he received ineffective assistance of trial counsel *per se* because Howard failed to comply with Indiana Admission and Discipline Rule 3 (Rule 3). In 1995–96, when Howard was representing Little, Rule 3 provided that in the trial court's sole discretion, an attorney not licensed in Indiana could appear in a particular proceeding for a temporary period, *i.e.*, *pro hac vice*, only if "said attorney appears with local Indiana counsel after petitioning the trial court for the courtesy and disclosing in said petition all pending causes in Indiana in which said attorney has been permitted to appear."[2] *Butler v. State*, 668 N.E.2d 266, 268 (Ind. 1995). Accordingly, we need not address further the merits of this claim.

---

**1.** Little also asserts that "the trial court erred and abused its discretion when it failed to ensure that trial counsel ... complied with the Admission and Discipline Rules." (Appellant's Br. p. 20). The only relevant authority Little cites in alleged support of this proposition, however, is the following: "It is not a trial court's duty to inquire whether one who purports to have authority to practice before the court is actually authorized to practice law in Indiana." *Pro–Lam, Inc. v. B & R Enters.*, 651 N.E.2d 1153, 1158 (Ind.Ct.App.

**2.** We note that the Official Commentary to the current Rule 3 states that the amendments apply only to requests for leave to appear *pro hac vice* filed on or after January 1, 1999. *See* Admis.Disc.R. 3. Because Howard's request would have been filed before January 1, 1999, we look to and quote from the former Rule 3.

Ct.App.1996) (quoting former Rule 3). Further, local Indiana counsel "shall sign all briefs, papers and pleadings in such cause and shall be jointly responsible therefor." *Id.* (quoting former Rule 3). Thus, absent leave of the court, an attorney not licensed to practice law in Indiana could neither enter an appearance on behalf of a client nor file any briefs, papers, or pleadings without the aid of local counsel. *Id.*

Here, Howard clearly failed to comply with the former Rule 3. The record shows that Howard filed his appearance on February 16, 1995. During a hearing on April 5, 1995, at which Little was present, the trial court ordered Howard to retain local counsel. On May 1, 1995, the trial court again ordered Howard to retain local counsel. On August 7, 1995, local counsel filed an appearance. At Little's post-conviction hearing, however, local counsel testified that the extent of her participation in Little's case was, at most, to sign a few pleadings.

Furthermore, on February 23, 1996, while he was suspended from the Illinois bar, Howard represented Little at a pretrial hearing. On August 12, 1996, the trial court ordered Howard to file a petition in compliance with Rule 3, listing all cases in Indiana in which he had been permitted to appear. At a hearing on September 26, 1996, at which Little was present, Howard was again ordered to comply with Rule 3. On October 11, 1996, Howard filed a pleading stating that Little's was the only Indiana case in which he had filed an appearance. Finally, on October 28, 1996, Howard served as counsel at Little's trial, without local counsel present.

In *Cole v. United States,* 162 F.3d 957 (7th Cir.1998), the Seventh Circuit considered whether representation by an attorney not admitted to the local bar should be considered a *per se* violation of the Sixth

Amendment, *i.e.,* a violation that automatically voids a conviction, without further inquiry into counsel's actual competence or actual prejudice to the defendant. *Id.* at 958. Distinguishing between non-lawyers and non-local lawyers, the Seventh Circuit reasoned as follows:

> The right to the representation of counsel implies some minimum standard of competence, but "the key to adequate representation is not technical license to practice in the jurisdiction involved, but a credential from some forum demonstrating the specialized knowledge of a lawyer." ... Thus, whether a lawyer has been admitted to practice in the local jurisdiction is not of constitutional dimension.

*Id.* (quoting *United States v. Maria–Martinez,* 143 F.3d 914, 917 (5th Cir.1998)). Because the defendant in *Cole* had been represented by a non-local lawyer, rather than a non-lawyer, the Seventh Circuit declined to apply a *per se* ineffectiveness rule. *See id.* The *Cole* court wrote further,

> As a general matter, only a few circumstances give rise to a *per se* violation of the Sixth Amendment right to counsel: no counsel present at all, or counsel not present at critical stages; complete failure to cross-examine or subject the opposing case to the adversarial process; an actual conflict of interest; and failure to file a requested appeal. The Supreme Court has described these as "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."

*Id.* (quoting *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

In the instant case, Little's trial counsel had been admitted to practice law in Illinois and thus had "a credential from some

forum demonstrating the specialized knowledge of a lawyer." *See id.* Accordingly, we adopt the reasoning of the Seventh Circuit and find that Howard's failure to comply with Rule 3 did not amount to a *per se* violation of Little's Sixth Amendment right to counsel.

■ Little also claims, however, that his state constitutional right to effective assistance of counsel was violated by Howard's lack of authority to practice law in Indiana. In *Butler v. State*, 668 N.E.2d 266, 267–68 (Ind.Ct.App.1996), this court found that when a defendant is unaware at the time of trial that his trial counsel is neither licensed to practice law in Indiana nor admitted *pro hac vice* pursuant to Rule 3, this court will presume that the defendant suffered prejudice and hold as a matter of law that the conduct of counsel in question was ineffective assistance of counsel *per se.* "The absence of such license or authority [to practice law in Indiana] strips away the presumption of competence, and the defendant need not show prejudice." *Id.* at 269. In *Butler,* however, the State did not dispute the defendant's contention that he did not know that his trial counsel was not licensed to practice law in Indiana. *Id.* at 268 n. 1. Thus, the *Butler* court stated:

> A different case would be presented if there was evidence of collusion between the defendant and his counsel in which the defendant was aware of his counsel's unauthorized status and yet proceeded to trial with that knowledge. Such action would be invited error and would, in effect, result in the waiver of a claim of ineffective assistance on those grounds.

*Id.* at 269 n. 4.

Little now contends that he did not know that Howard was not licensed to practice in Indiana. But at the post-conviction hearing, Howard testified that he informed Little the "first time [he] met him" that he was not licensed to practice in Indiana. (Transcript p. 51). As stated in the post-conviction court's conclusions,

> Standing alone, the court might not be so quick to believe Mr. Howard's testimony over [Little's]. However, the court's orders indicate that the matter was discussed at numerous hearings .... and [Little] was present at those hearings. Therefore, the court does believe [Little] knew that his attorney was not licensed in Indiana.

(Appellant's App. p. 69). Because the post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses, we concur with its assessment of these facts. *See Fisher,* 810 N.E.2d at 679.

We find that for Little to have proceeded to trial with knowledge of Howard's unauthorized status was invited error; therefore, Little cannot now assert ineffective assistance of counsel on the ground that Howard was not authorized to practice law in Indiana. *See Butler* at 269 n. 4. In sum, we find that Howard was not ineffective *per se,* and we also find that Little waived the claim that he received ineffective assistance of counsel in violation of article I, § 13, because Little proceeded to trial with knowledge that Howard had failed to comply with Rule 3 and was, therefore, unauthorized to practice law in Indiana.[3]

### 2. *Howard's Suspension*

■ Next, Little asserts that he received ineffective assistance of counsel because Howard represented Little at a pretrial hearing while suspended from the

---

**3.** Whether Howard's blatant disregard for the Indiana Rules of Admission and Discipline subjects him to the disciplinary jurisdiction of our supreme court is, of course, a separate matter.

Illinois bar and failed to notify the trial court of his suspension pursuant to Rule 23(26).[4] We fail to see how Howard's failure to notify the court of his suspension from the Illinois bar is relevant to Little's ineffective assistance of counsel claim; however, the fact that Howard represented Little while he was suspended merits consideration.

Little cites no authority and puts forth no substantive evidence in support of the contention that Howard's suspension from the Illinois bar amounts to ineffective assistance of counsel. Instead, Little urges us to find that Howard's representation of him at a pre-trial hearing while Howard was suspended from the Illinois bar amounts to a *per se* violation of Little's right to counsel under the Sixth Amendment and article I, § 13. Again, we disagree.

As to the Sixth Amendment, the Seventh Circuit has explicitly rejected the contention that mere deficiencies in an attorney's bar membership give rise to a *per se* violation of the right to counsel under the Sixth Amendment. For instance, in *United States v. Williams*, 934 F.2d 847 (7th Cir.1991), the Seventh Circuit considered whether there was a *per se* violation when trial counsel's license was suspended for ninety days for professional misconduct pursuant to a disciplinary decision rendered during the defendant's trial. *See id.* at 851. The *Williams* court found that the trial counsel was a member of both the state and federal bar throughout the duration of his representation of the defendant

at trial, and ultimately, the Seventh Circuit opted not to create a *per se* rule for these facts, requiring instead a showing of actual errors and omissions by counsel that prejudiced the defense. *Id.* We likewise conclude that the mere fact that Howard was suspended from the Illinois bar during a pre-trial hearing does not give rise to a *per se* violation of Little's Sixth Amendment right to counsel.

As to Little's state constitutional claim, there is no authority in Indiana for the proposition that representation by an attorney suspended in another jurisdiction amounts to ineffective assistance of counsel *per se,* and Little presents no cogent argument as to why these facts should constitute ineffectiveness *per se.* Having failed to persuade us that this court should presume prejudice and apply a *per se* rule, Little then fails to point to any specific acts or omissions to persuade us that Howard's performance fell below an objective standard of reasonableness or that Little suffered prejudice as a result of Howard's performance during the pre-trial hearing. Thus, Little has wholly failed to satisfy either prong of the *Strickland* test. We conclude that Little did not receive ineffective assistance of counsel simply because Howard was suspended. *See Strickland,* 466 U.S. at 690, 694, 104 S.Ct. 2052.

### 3. *Jury Instruction*

▆▆ Last, Little asserts that Howard was ineffective for failing to challenge the trial court's jury instruction on accomplice liability. Specifically, Little contends that the jury instruction set forth an incorrect

---

4. Rule 23(26) reads as follows:
 (c) *Duties of Suspended Attorneys.* The suspended attorney shall, within twenty (20) days from the date of the notice of the suspension, file with the Court an affidavit showing that:
 (1) All clients being represented by the attorney in pending matters have been notified ... of the nature and duration of the sus-

pension, and all pending matters of clients requiring the attorney's services during the period of suspension have been placed in the hands and care of an attorney admitted to practice before the Supreme Court of Indiana with the consent of the client.

 . . .

Admiss.Disc.R.23(26).

statement of law, relying in support of this contention on *Walker v. State*, 779 N.E.2d 1158 (Ind.Ct.App.2002), *trans. denied.* We disagree.

The accomplice liability jury instruction at issue in this case reads as follows:

It is a fundamental principle of law that where two or more persons engage in the commission of an unlawful act, each person is criminally responsible for the actions of each other person which were a probable and natural consequence of their common plan, even though not intended as part of the original plan. Under these circumstances, it is not essential that participation of any one person to each element of the crime be established.

Under Indiana law, "a person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person 1) has not been prosecuted for the offense; 2) has not been convicted of the offense; or 3) has been acquitted of the offense."

To aid under the law is to knowingly aid, support, help or assist in the commission of a crime. Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to allow an inference of participation. It is being present at the time and place and knowingly doing some act to render aid to the actual perpetrator of the crime.

The presence of a person at the scene of the commission of a crime and companionship with another person engaged in the commission of the crime and a course of conduct before and after the offense are circumstances which may be considered in determining whether such person aided and abetted the commission of such crime.

(Record of Proceedings p. 97).

The jury instruction at issue in this case is essentially identical to the jury instruction analyzed in *Walker.* *See Walker*, 779 N.E.2d at 1159–60. In *Walker*, we reversed the defendant's convictions after finding that the accomplice liability jury instruction created a mandatory presumption violating the defendant's due process rights under the Fourteenth Amendment to the United States Constitution. *See id.* at 1160. Subsequent to the *Walker* decision, however, our supreme court specifically disapproved of that case's holding in *McCorker v. State*, 797 N.E.2d 257, 264–65 (Ind.2003), finding that the jury instruction at issue in *Walker* did not erroneously shift the burden of proof from the State on an essential element of the charged offense.[5] Thus, the jury instruction of which Little complains was and still is a correct statement of the law, albeit one "inartfully worded in several respects." *McCorker*, 797 N.E.2d at 259.

In addition to being overruled by *McCorker*, *Walker* was also decided approximately six years subsequent to the submission of the questioned instruction in Little's case (and four years after his direct appeal was decided). It is well settled that an attorney cannot be found ineffective for failing to anticipate changes in the law. *See Gann v. State*, 550 N.E.2d 73, 75 (Ind.1990) ("We cannot say that the original trial counsel was incompetent because he did not make an objection to an instruction which had not yet been held to be reversible error."); *McChristion v. State*, 511 N.E.2d 297, 301–02 (Ind.1987) ("An attorney is not required to prophesy future court rulings and act in accordance with them."). The cases Little cites in his reply

---

5. The court also criticizes the instruction, stating that "there are problems with [the] instruction [ ] and we counsel courts against using it in the form given here." *McCorker*, 797 N.E.2d at 264.

**506** 

brief in support of his argument that there was other case law in existence establishing the problematic nature of this jury instruction are easily distinguishable insofar as they all deal with jury instructions giving rise to unconstitutional "mandatory presumptions." *See, e.g., Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Reid v. State,* 529 N.E.2d 1309 (Ind.Ct.App.1988).

 To succeed on a claim that counsel was ineffective for failure to make an objection, the defendant must demonstrate that if such objection had been made, the trial court would have had no choice but to sustain it. *Sanchez v. State,* 675 N.E.2d 306 (Ind.1996). Here, because the instruction as given was a correct statement of the law, an objection would not have been sustained. *See id.* at 311. Thus, Little does not demonstrate that trial counsel was ineffective in failing to object to the jury instruction on accomplice liability.

### B. *Ineffective Assistance of Appellate Counsel*

 Finally, Little alleges that he received ineffective assistance of appellate counsel. Specifically, Little argues that his appellate counsel's performance was deficient because he failed to argue on appeal that to give the accomplice liability jury instruction was fundamental error. We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Fisher v. State,* 810 N.E.2d 674, 676–77 (Ind.2004). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* at 677.

 Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) deni-

al of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* (citing *Bieghler v. State,* 690 N.E.2d 188, 193–95 (Ind.1997), *reh'g denied*). We employ a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Fisher,* 810 N.E.2d at 677 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)).

In the instant case, Little alleges that his appellate counsel was ineffective for failing to raise the claim that giving the accomplice liability jury instruction was fundamental error. At the post-conviction hearing, appellate counsel testified that, in retrospect and in light of the *Walker* holding, he should have raised this claim. (Tr. p. 9). We have already established, however, that the jury instruction at issue was not impermissible; thus, we do not find that this unraised issue is "clearly stronger" than the issues appellate counsel did raise on appeal. *See Fisher,* 810 N.E.2d at 677. Consequently, Little has failed to demonstrate that he received ineffective assistance of appellate counsel.

### CONCLUSION

Based on the foregoing, we find that Little has failed to meet his burden of showing that the evidence is without conflict and leads unmistakably to a conclusion opposite that reached by the post-conviction court. Accordingly, we affirm the post-conviction court's denial of Little's Amended Petition for Post–Conviction Relief.

Affirmed.

CRONE, J., and VAIDIK, J., concur.