Joe Mario **TREVINO**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69,337.

Court of Criminal Appeals of Texas, En Banc.

Oct. 14, 1992.

---

Art Brender, Terry M. Casey, court appointed on appeal, Fort Worth, Charles Van Cleve, court appointed on appeal, Arlington, for appellant.

Tim Curry, Dist. Atty. & C. Chris Marshall, Mary Thornton Taylor, Rufus Adcock & Tanya S. Dohoney, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for State.

OPINION ON REMAND FROM
THE UNITED STATES
SUPREME COURT

CAMPBELL, Judge.

Appellant was convicted of capital murder. See Tex. Penal Code § 19.03(a)(2). The jury returned affirmative answers to the two special issues submitted, and appellant was sentenced to death. Appeal to this court was automatic.

■ Appellant filed a pre-trial motion requesting that the State not be permitted to use peremptory challenges based on race. He alleged that the State had historically used peremptory challenges in a racially discriminatory manner. This, he asserted, would deprive him of a jury drawn from a fair cross section of the community in violation of the Sixth Amendment. A ruling was reserved until voir dire. During voir dire the State used peremptory challenges to strike all the qualified black members of the venire.[1] Appellant asked the trial court to require the State to articulate its reasons for striking the particular venirepersons. This request was denied.

On appeal appellant reasserted that the prosecution's racially-motivated use of peremptory challenges had deprived him of his rights under the Sixth and Fourteenth Amendments. Shortly after appellant filed his brief in this Court, the United States Supreme Court held in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the Equal Protection Clause of the Fourteenth Amendment allows a party to demonstrate racially motivated use of peremptory challenges in a single case. This Court determined that

1. Appellant and the State differ on the precise number of black venirepersons struck. Appellant maintains that Margaret Sanders, Ella Hollie, and Oscar Johnson were struck with peremptories. The State agrees as to Sanders and Hollie but contends that Johnson was struck for cause. The record reflects that Johnson was, in fact, struck for cause and that appellant objected; however, the State then used a peremptory challenge on Johnson "in an abundance of caution," for fear that the trial court's decision

might have been in error. The court heard argument on the propriety of the State's position but evidently made no ruling. We note that on original submission to this Court both the State and appellant were in agreement on the number of peremptories used on the black venirepersons; that is, three. We will not now allow the State to reopen that question. We proceed on the assumption that three black venirepersons were struck with peremptory challenges.

appellant's "fair cross section" argument was premised on the Sixth Amendment and that he had failed to raise an equal protection claim. *Trevino v. State*, 815 S.W.2d 592, 598 (Tex.Cr.App.1991). Thus, we held in effect, that the rule of *Batson* was not available to appellant.

On April 6, 1992, the United States Supreme Court granted certiorari, reversed our decision, and remanded appellant's case to this Court. *Trevino v. Texas*, — U.S. —, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992). Based on the decision in *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991), the Supreme Court found that appellant's claim of an historical pattern of racial discrimination was sufficient to preserve the equal protection claim. Thus, the Supreme Court stated, appellant was entitled to the rule of *Batson*.

■ The State filed a brief on remand in which it suggests that we have two options: 1) remand the cause to the trial court for a *Batson* hearing, or 2) decide the merits of appellant's claim on the record already before us. The State argues that the latter is preferable and supplies us with several plausible reasons why this should be done in appellant's case. To adopt the State's preferred approach, however, would eviscerate appellant's right to have the trial court pass on the credibility of the prosecutor's explanations for his use of peremptory challenges. We therefore decline to adopt the State's preferred approach and will remand the cause to the trial court.

This appeal is abated and the cause remanded to the trial court with instructions to conduct a full adversarial hearing complying with *Batson* concerning the State's use of peremptory strikes of venirepersons Sanders, Hollie, and Johnson. The record of that hearing, together with the trial court's findings of fact and conclusions of law, shall be forwarded to this Court for our review within 120 days of the date of this opinion.

It is so ordered.

McCORMICK and WHITE, JJ., concur in the result.

1. All emphasis throughout this opinion is mine

CLINTON, Judge, concurring.

This dust up is, alas, symptomatic of the contentious nature of too many communities of interest in our society. When the issue is alleged discrimination on account of race, their adversarial tendencies become especially acute as tensions mount between degrees of respective sensibilities. See, e.g., *Seubert v. State*, 787 S.W.2d 68 (Tex.Cr.App.1990).

In the instant cause on original submission this Court examined and rather summarily ruled on just such an issue that is still the bone of contention here, *viz:*

> "In his second point of error, appellant asserts that he was deprived of a jury comprising a fair cross-section of the community as guaranteed to him by the Sixth and Fourteenth Amendments in that the State struck all black jurors from the jury panel. This issue has been decided adversely to appellant in Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). In *Holland,* the Court decided that '[a] prohibition upon the exclusion of cognizable groups through peremptory challenges has no conceivable basis in the text of the Sixth Amendment, is without support in our prior decisions, and would undermine rather than further the constitutional guarantee of an impartial jury.' 493 U.S. at 478, 110 S.Ct. at 806. [note 3, stating in pertinent part that appellant *"does not rely upon the Equal Protection Clause"*]. See *Seubert v. State,* 787 S.W.2d 68 (Tex.Cr.App.1990). See also [citations omitted]. We overrule appellant's second ground of error."

*Trevino*, at 598.[1]

In determining to grant certiorari the Supreme Court first critically and fairly reviewed circumstances surrounding the opinion on original submission and the opinion itself. That done it then determined that appellant had not only "presented his equal protection claim to the trial court," but also had "preserved his equal protec-

unless otherwise indicated.

tion claim before [this Court]." Finally the Supreme Court rejected the State's contention that appellant's "equal protection claim had no legal support." Accordingly, without setting the cause for submission on briefs and oral argument, it simultaneously granted certiorari, reversed the judgment of this Court and remanded the cause "for further proceedings not inconsistent with this opinion." *Trevino v. Texas,* 503 U.S. ——, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992).[2]

With those observations and because it is clear enough to me that the Supreme Court merely found we failed to consider all of its germane decisions then extant, and did not gratuitously undertake to override any local rule of procedure for preserving error, I join the opinion and order of this Court.

### MALONEY, Judge, dissenting.

To remand this case or any case originally tried in 1984 back for a Batson hearing to test the motives of the prosecution as they existed eight years ago is asking for inventive reasoning that could border on inadvertent manufacture. In this case, the defendant presented a pre-trial motion requesting that the Court order the prosecution not to utilize its preemptory challenges "based on race". This motion was denied by the trial court and the record reflects that the state used its preemptory challenges to strike all the qualified black members of the venire.

Despite defendant's request made at the time of trial that the State place in the record its reasons for exercise of such preemptory challenges, the trial court did not require the State to do so.

I would reverse and remand this case for a new trial and respectfully dissent because this court does not do so.

### BENAVIDES, Judge, dissenting.

I acknowledge that the United States Constitution is the supreme law of the land. I acknowledge that decisions of the United States Supreme Court on questions of federal constitutional law are superior to those of this Court. I acknowledge the duty of this Court not to implement any law of Texas in a manner contrary to the United States Constitution as authoritatively construed by the Supreme Court. But I do not acknowledge that the Supreme Court is the final arbiter of what is purely Texas law, nor do I acknowledge that the Supreme Court has authority to insist that the courts of Texas provide relief for the violation of federal constitutional rights in a forum or by a means not available under Texas law. *See Case v. Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965); *Ex parte Crispen,* 777 S.W.2d 103, 107 (Tex.Crim.App.1989) (Clinton, J., concurring).

The opinion in *Trevino v. Texas,* —— U.S. ——, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992) is unclear to me, as is the opinion upon which it relies, *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Specifically, it is unclear whether, in con-

2. Appellant filed his appellate brief in this Court December 15, 1985; *inter alia,* he noted the pendency of *Batson v. Kentucky* in the Supreme Court after oral argument had been heard. From that predicate the Supreme Court went on to point out that *Batson* was decided April 30, 1986; that in its brief thereafter filed, the State discussed but distinguished *Batson* in that "a criminal defendant does not state an equal protection claim unless he alleges that the excluded jurors are members of the same protected class as he," a view the Supreme Court noted it rejected in *Powers v. Ohio,* 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411, decided April 1, 1991. Turning to deal with this Court, the Supreme Court further observed:

"The Court of Criminal Appeals of Texas, sitting en banc, affirmed the petitioner's con-

viction and sentence on June 12, 1991, and denied petitioner's motion for rehearing on September 18, 1991. The opinion of the Court of Criminal Appeals does not set forth the reason for the delay of over five years between the submission of briefs and the resolution of the appeal. With respect to peremptory challenge question, the court stated that the argument was foreclosed by *Holland v. Illinois....* In a footnote, the Court of Criminal Appeals stated that the argument in petitioner's brief did not amount to reliance on the Equal Protection Clause.... The court's opinion cited neither *Powers* nor *Ford v. Georgia,* 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935, which we decided on February 19, 1991. We now grant certiorari."

*Id.,* at ——, 112 S.Ct., at 1549, 118 L.Ed.2d, at 199.

text of complaints about racially discriminatory peremptory challenges, the Court held that questions of procedural default, preservation of error, specificity of objection, and other usually local matters affecting the reviewability of legal questions, as opposed to the merits of those questions, is itself now a question of federal constitutional law in the state courts or if, instead, the Court held only that local rules affecting reviewability do not bar federal judicial review under some circumstances. If the former, it is clear that the rule of forfeiture we imposed on original submission in this case is unconstitutional, with the consequence that we must reach the merits of Appellant's claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on remand. *See Trevino v. State*, 815 S.W.2d 592 (Tex.Crim.App. 1991). If the latter, it is equally clear to me that Appellant's proper remedy is by writ of habeas corpus in a federal district court.

My preference, of course, is to believe that our rules of procedural default, and especially the rule of specificity by which Appellant's complaint was forfeited on original submission in this case, are not unconstitutional as applied to any situation. The particular rule now in question does not discriminate between federal and state errors, nor between errors of constitutional, statutory, and decisional origin. It simply provides that, in circumstances where some complaint is necessary to preserve a question for appellate review, such complaint must be specific enough fairly to apprise the trial judge of its basis. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim.App.1977). We have long applied this rule so as to insist that a claim of right potentially emanating from more than one source reasonably identify the source relied upon. It follows that identification of only one source fails to give notice that reliance might also be placed on another. This has been the rule in Texas time out of mind, and it is inconceivable to me that anyone would think it unreasonable, let alone unconstitutional, to apply it in context of a *Batson* complaint.

It may be, of course, that the Supreme Court considers our rule to be unobjectionable in the abstract but too strict in practice. Again, however, the proper application of a state rule is undoubtedly a matter of state law, upon which this Court, not the United States Supreme Court, has ultimate authority. Consequently, if I believed the Supreme Court meant only to hold that Appellant's objection was, as a matter of constitutional law, specific enough for the Fourteenth Amendment, I should necessarily conclude that the Texas rule is unconstitutional in some degree, since it undoubtedly holds, just as we said on original submission, that Appellant's objection was not specific enough in this case.

Although there are reasons for thinking the Supreme Court did mean to declare our forfeiture rule unconstitutional as applied to *Batson* claims, there are some better reasons, in my judgment, for thinking otherwise. For example, I find it more than a little interesting that the Supreme Court chose to describe its holding in *Ford* as a decision that Georgia's procedural default rule "cannot bar federal judicial review of petitioner's equal protection claim." 498 U.S. at —, 111 S.Ct. at 858, 112 L.Ed.2d at 950. Intellectual support for this holding can be traced to *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), wherein the Supreme Court held that "a litigant's procedural defaults in state court do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest." *Id.* at 447, 85 S.Ct. at 567. Yet, in remanding to Mississippi for a further evidentiary hearing to determine whether petitioner had affirmatively waived his Fourth Amendment rights, the United States Supreme Court emphasized that,

... we neither hold nor even remotely imply that the State must forgo insistence on its procedural requirements if it finds no waiver. Such a finding would mean only that petitioner could have a federal court apply settled principles to test the effectiveness of the procedural default to foreclose consideration of his constitutional claim. If it finds the pro-

cedural default ineffective, the federal court will itself decide the merits of his federal claim, at least so long as the state court does not wish to do so. By permitting the Mississippi courts to make an initial determination of waiver, we serve the causes of efficient administration of criminal justice, and of harmonious federal-state judicial relations. Such a disposition may make unnecessary the processing of the case through federal courts already laboring under congested dockets, or it may make unnecessary the relitigation in a federal forum of certain issues.

*Id.* at 452–453, 85 S.Ct. at 570.

Clearly, *Henry* cannot be read to hold that application by a state court of its forfeiture rules to a federal claim violates the United States Constitution, but only that such rules should be considered inadequate to bar federal review whenever they are unreasonable by constitutional standards. As we observed recently in *Rosales v. State,* 841 S.W.2d 368 (Tex.Crim.App. 1992), "We are frankly puzzled at the remand in *Ford v. Georgia,* supra, and hence in *Trevino* as well … [because] a state holding that a trial objection is insufficiently specific to meet its own rules governing procedural default is inadequate to bar *federal* judicial review would not seem to require further action at the state court level, other than an analysis for harm[.]" At 380 (emphasis in original). Although peculiar in some respects, there is really nothing inconsistent about the notion that state forfeiture rules may be inadequate to bar federal judicial review, yet constitutionally unexceptionable. Questions of adequate and independent state grounds are altogether different from questions of constitutionality. *Cf. James v. Kentucky,* 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984).

*The Texas forfeiture rule merely operates to deny Appellant a state forum in which to press his federal claim. It does not deny his federal claim on the merits.* Because it is apparent that the United States Constitution does not require the states to provide an appellate forum for the vindication of federal constitutional rights

at all, it seems probable that the states may also opt to deny an appellate forum for claims of all kinds under objectively rational and even-handed standards. The rule of procedural default here in question does not discriminate against federal claims, but subjects all claims, state and federal alike, to the same general principles of forfeiture. *Compare NAACP v. Alabama,* 377 U.S. 288, 293–302, 84 S.Ct. 1302, 1306–1311, 12 L.Ed.2d 325 (1964); *NAACP v. Alabama,* 357 U.S. 449, 454–458, 78 S.Ct. 1163, 1168–1170, 2 L.Ed.2d 1488 (1958). Accordingly, there is no reason to think that the rule itself is offensive to any provision of the federal constitution, even when applied to the assertion of constitutional violations in state court.

It is an entirely different matter, however, whether and under what circumstances state procedural rules operate as adequate grounds, independent of federal law, for a result reached in state court. Irrespective of the constitutionality of such rules, it is a federal question whether judicial review, either direct or collateral, will be foreclosed in the federal courts on account of a state procedural bar. *See Ford,* 498 U.S. at —— n. 6, 111 S.Ct. at 857 n. 6, 112 L.Ed.2d at 948, n. 6 and accompanying text. A number of Supreme Court decisions elaborate the conditions under which such state rules may thus be considered inadequate. For example, if application of the state rule is, in the opinion of the federal judiciary, "without any fair or substantial support," federal review of the claim is not barred. *Staub v. City of Baxley,* 355 U.S. 313, 319–320, 78 S.Ct. 277, 280–281, 2 L.Ed.2d 302 (1958). *Cf. Ward v. Board of County Com'rs of Love County, Okl.,* 253 U.S. 17, 22, 40 S.Ct. 419, 421, 64 L.Ed. 751 (1920). Likewise, federal courts may reach the merits of a federal claim if the state procedural bar does not serve a "legitimate state interest[,]" *Henry,* 379 U.S. at 447, 85 S.Ct. at 567, or is not a "firmly established and regularly followed state practice[.]" *James,* 466 U.S. at 348, 104 S.Ct. at 1835. Evidently, *they* may even do so if to do otherwise would result in similarly situated claimants being treated differently

without a rational basis, as in the instant cause. *See Trevino*, — U.S. at —, 112 S.Ct. at 1550. Slip Op. at 6. But the state rule need not itself be unconstitutional for a federal court to support any of these findings, and none of the cited cases need necessarily be construed so to hold. *In short, it does not follow from the fact that a matter is reviewable in federal court that it is a violation of the United States Constitution not to review it in state court.*

I understand, of course, that the Supreme Court is in a disagreeable position when it comes to the kind of default at issue here. After all, the Court did choose in *Batson* itself, over vigorous dissent by the Chief Justice, to announce a new rule of Equal Protection in a case which arguably raised only Sixth Amendment issues. But that is a problem of federal procedural default law. It does not affect Texas jurisprudence. Indeed, as should be apparent from our holding on original submission in this case, Batson himself would have received no decision from this court respecting Equal Protection violations in the racially discriminatory exercise of peremptory jury challenges.

Finally, although it is not essential to an analysis of the problem in this case, I would also note that Appellant can probably still pursue a remedy by way of federal habeas corpus because his conviction in this cause did not become final before the Supreme Court announced its opinion in *Batson*. *See Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986); *Teague v. Lane*, 489 U.S. 288, 305–310, 109 S.Ct. 1060, 1072–1075, 103 L.Ed.2d 334 (1989). Moreover, because the rule of specificity which operated as a procedural bar to his claim in this Court on original submission would necessarily not be regarded by the federal habeas court as an adequate and independent state ground for decision after the Supreme Court's opinion in this case, Appellant would also probably not have to demonstrate cause for his state default or prejudice resulting from it. *Cf. Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–2507, 53 L.Ed.2d 594 (1977). But such matters are not the concern of this Court. I call attention to them

here only because, as in *Henry*, they tend to suggest that remand in the instant cause was just a courtesy.

The relationship between state and federal courts is often strained in cases of this kind, and it is not my purpose to exacerbate the problem. But it is my duty as a Texas judge to implement the laws of this state except where it is clear to me that those laws either violate the United States Constitution in practice or have authoritatively been held to do so by a court with power to declare federal law in Texas. Principles of federalism quite properly allow Texas courts and the courts of other states to establish their own rules of procedural default. And it follows that those principles similarly require the federal courts to respect dispositive provisions of Texas law. Just as Texas law may sometimes provide greater protection than cognate provisions of the federal law, so also may it provide less protection in some circumstances. *Cf. Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). That is the nature of a federal system. It seems to me that by providing an exception to our procedural default rule in the instant case we might indeed make it unconstitutional because other defendants, similarly situated in the sense that they also made nonspecific objections at trial, would be barred from having the appellate courts review their claims.

For the reasons given above, I am unwilling to read the Supreme Court's opinion in this case as a declaration that the Texas procedural rule requiring a specific objection in the trial court for preservation of the right to complain on appeal is unconstitutional as applied to Appellant on original submission in this cause. And, as I remain satisfied after reconsideration that Appellant's complaint, although no less specific than that of Batson himself, was nevertheless ineffective to preserve the alleged error for appellate review under the laws of Texas, I would reaffirm his conviction and sentence of death. Because the majority fails to do so, I respectfully dissent.