**Joe Mario TREVINO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69337.

Court of Criminal Appeals of Texas, En Banc.

May 26, 1993.

Rehearing Denied Sept. 22, 1993.

Art Brender, Terry M. Casey and Frank P. Colosi, court appointed on appeal, Fort Worth, Charles Van Cleve, court appointed on appeal, Arlington, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Mary Thornton Taylor & Rufus Adcock, Asst. Dist. Attys, Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON REMAND FROM THE UNITED STATES SUPREME COURT

CAMPBELL, Judge.

Appellant was convicted of capital murder. See Tex.Penal Code § 19.03(a)(2). On original submission, we overruled appellant's twenty-four points of error and affirmed his conviction. *Trevino v. State*, 815 S.W.2d 592 (Tex.Cr.App.1991). In that opinion, we concluded that appellant had failed in his second point of error to raise an equal protection claim regarding the prosecution's use of its peremptory challenges to strike black people from the venire panel. *Id.* at 598. The United States Supreme Court granted certiorari, concluded that appellant had preserved his equal protection claim, and remanded appellant's case to this Court. *Trevino v. Texas*, ─── U.S. ───, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1991). We remanded appellant's case to the trial court with instructions that a full hearing be conducted for the purpose of assessing appellant's *Batson*[1] contentions. *Trevino v. State*, 841 S.W.2d 385, 387 (Tex.Cr.App.1992). That hearing has been conducted and the record thereof is now before this Court. We will affirm appellant's conviction.

■ At the hearing, the trial court heard testimony from five witnesses from the prosecution concerning why peremptory challenges had been used to strike the three qualified black members of the venire, Margaret Sanders, Oscar Johnson, and Ella Hollie. Additionally, one of appellant's trial attorneys testified at the hearing. After the hearing, the trial court entered findings of fact and conclusions of law. The trial court

found that the prosecution had exercised its peremptory challenges against Sanders, Johnson, and Hollie based upon race neutral reasons. We will overrule the trial court's determinations only if our review of the record reveals them to be clearly erroneous. *DeBlanc v. State*, 799 S.W.2d 701, 713 (Tex. Cr.App.1990), cert. denied, ─── U.S. ───, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991); *Whitsey v. State*, 796 S.W.2d 707, 721 (Tex.Cr.App. 1990) (opinion on rehearing). When the evidence in the record is susceptible to two reasonable interpretations and the trial court's decision is in accord with one of those interpretations, then the trial court's choice between those interpretations may not be deemed clearly erroneous. *DeBlanc*, 799 S.W.2d at 713; *Whitsey*, 796 S.W.2d at 721–722.

■ At the hearing, Judge Rufus Adcock testified. Adcock stated that he had been the lead prosecutor when appellant was tried. He testified that he had conducted the voir dire of both Sanders and Hollie. Regarding Sanders, he stated that he had struck her from the jury because she seemed indifferent to law enforcement and was not in favor of capital punishment. In support of these assertions, Judge Adcock relied on Sanders' comments that she did "not discuss politics, religion or anything to do with the law." He believed that Sanders was against the death penalty because she quoted the Bible in support of her belief "that God says thou shalt not kill [and] vengeance is mine." He also struck Sanders because she had two relatives in the penitentiary and was evasive in a number of the answers she gave.

Concerning Hollie, he was even more convinced that she was not in favor of the death penalty. Hollie admitted that she had not given much thought to capital punishment, but was "leaning closer to not being for the death penalty." Adcock was especially impressed by the fact that Hollie admitted that if she were the foreman of the jury, she would not be able to sign her name to a verdict that would result in a sentence of death. Hollie stated that her inability to

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

perform such an act stemmed from her Christian beliefs. Adcock specifically testified that he received a definite visual and aural reaction from Hollie when he asked her the question about signing the verdict. Additionally, Adcock testified that he struck Hollie because appellant had already exhausted his peremptory challenges. This allowed Adcock to seek jurors who would be better able to return a verdict of death.

Adcock did not conduct the voir dire of Johnson. Instead, an assistant district attorney named Ken Gordon questioned Johnson. Gordon testified that Johnson was struck because he was strongly biased against the death penalty. In support of this, the record of the voir dire reflects that Johnson stated that he would automatically vote against the death penalty regardless of what the facts might show. Additionally, Johnson stated that he could never be convinced that a person would probably commit future acts of criminal violence. On these grounds, the trial court granted the State's challenge for cause. The State used a peremptory challenge against Johnson in an effort to protect against error that the trial court may have committed in excusing Johnson for cause.

In addition to the testimony of Adcock and Gordon, Judge Clifford Davis testified at the hearing. Judge Davis stated that he had been the presiding judge at appellant's original trial. Davis stated that since he was a black man, he was familiar with the effects of racial discrimination and had been active for thirty to forty years in the National Association for the Advancement of Colored People. He stated that the prosecution was consistent in its treatment and interrogation of the members of the venire. Judge Davis specifically said, "There was nothing to indicate to me [that] there was any plan to eliminate either blacks or hispanics from service on that jury." Appellant's sole witness at the hearing, J.R. Molina, one of appellant's trial attorneys, could only assert that the Tarrant County District Attorney's office struck veniremembers based on race. Molina admitted, however, that he had no personal knowledge of the prosecution's motivations and could not name a specific past case where the prosecution had used its peremptory challenges in a racially discriminatory manner.

Based upon this record, the trial court's determinations can not be characterized as "clearly erroneous." All of the trial court's findings of fact and conclusions of law are amply supported in the record from the original voir dire and from the *Batson* hearing.[2] Appellant's point of error two which alleges a violation of *Batson* is overruled.

The judgment of the trial court is AFFIRMED.

MALONEY, J., dissents for the reasons heretofore stated by him in this case. *Trevino v. State,* 841 S.W.2d 385, 388 (Tex.Cr.App. 1992).

---

2. The trial court also found that "in all probability, no [prosecutor's] notes [of the voir dire] existed." During the voir dire, the prosecution stated on the record that only notes physically placed on the juror questionnaires regarding such facts as jurors' places of employment, length of employment, religion, etc. had been taken. The trial court noted in its conclusions of law that "[t]here were no notes in the appellate record. [Also], [a]ppellate counsel did not object to the absence of the notes." The record amply supports the trial court's conclusion that no notes existed.